FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 21, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MYSTICAL L.,<br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　　　　　Defendant. | No. 1:17-cv-03166-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 15, 20 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 20.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 11, 2014, Plaintiff field applications for Title II disability insurance benefits and for Title XVI supplemental security income benefits, alleging an amended disability onset date of March 31, 2011.  Tr. 49-50, 211-17.[1]  The applications were denied initially, Tr. 142-48, and on reconsideration, Tr. 153-57. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April

_____

[1] Although Plaintiff's disability insurance benefits application was included in the record at Tr. 211-17, Plaintiff's SSI application was not included in the administrative record.  Neither party argued any error in this regard.

ORDER - 6

8, 2016.  Tr. 45-78.  On May 26, 2016, the ALJ denied Plaintiff's claim.  Tr. 23-38.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2011.  Tr. 25.  At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, sacroiliitis, coccydynia, and obesity.  Tr. 26.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 29.  The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] must be permitted to change position from sit to stand or stand to sit approximately every thirty minutes at the work station and [Plaintiff] would remain in the other position for approximately thirty minutes, which would result in standing and sitting for approximately half of the day each; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch; never crawl; and avoid concentrated exposure to vibrations in the workplace.

Tr. 30.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  Tr. 36.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry folder and ticket taker.  Tr. 37.  The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security

ORDER - 7

Act, from March 31, 2011, through May 26, 2016, the date of the ALJ's decision. Tr. 38.

On July 27, 2017, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ properly found at step five that Plaintiff could perform other work in the national economy.

ECF No. 15 at 4.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her subjective symptom claims. ECF No. 15 at 17-20. An ALJ engages in a two-step analysis to determine whether to discount a

ORDER - 8

claimant's testimony regarding subjective symptoms.[2]  SSR 16-3p, 2016 WL

1119029, at *2.  "First, the ALJ must determine whether there is objective medical

evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation

marks omitted).  "The claimant is not required to show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she

need only show that it could reasonably have caused some degree of the

symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

_____

[2] At the time of the ALJ's decision in May 2016, the regulation that governed the

evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p

effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms

in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's

decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded

effective June 14, 2018, in favor of the more comprehensive SSR 16-3p.  Neither

party argued any error in this regard.

ORDER - 9

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims).  "The clear and convincing

[evidence] standard is the most demanding required in Social Security cases."

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

*of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of an individual's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c)(1)-(3), 416.929(c)(1)-(3) (2011).  The ALJ is instructed to "consider

all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 31-32.

### 1. Supporting Medical Evidence

The ALJ found the severity of Plaintiff's symptom complaints were not consistent with the medical evidence.  Tr. 32-34.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ noted that Plaintiff testified to significant daily back pain that caused her to be unable to walk or sit for more than 45 minutes at a time.  Tr. 31;

*see* Tr. 57-58. However, the ALJ noted that the objective imaging in the record did

not support the level of impairment alleged. Tr. 32; *see* Tr. 377 (February 2012

MRI showed mild degenerative joint disease, small annular tear L5-S1, moderate

to severe facet joint hypertrophy at that level with mild to moderate left greater

than right foraminal narrowing); Tr. 419 (February 2012 MRI impression: mild

degenerative changes of the lumbar spine most pronounced at the L5/S1 level); Tr.

378 (MRI from late 2013 showed moderate to severe facet arthropathy at L5-S1

and small annular tear at that level; recent plain films are essentially negative); Tr.

415 (October 30, 2013 MRI showed no significant change from February 2012

MRI); Tr. 389, 504 (Plaintiff's treating provider interpreted the October 2013 MRI

as showing mild disc disease); Tr. 565 (April 2015 MRI showed mild lumbar

degeneration and no significant changes from February 2012); Tr. 583 (updated

MRI reviewed in March 2016 showed no significant stenosis). The ALJ also noted

that physical examinations also showed mild results. Tr. 32-33; *see* Tr. 408

(October 22, 2010 examination showed normal gait and station, left hip elevated

compared to the right, no vertebral column tenderness, some SI joint tenderness);

Tr. 344 (August 15, 2011 examination showed tenderness to palpation at L5 level,

no muscle spasm, no tenderness to palpation over sacroiliac joints, straight leg test

negative bilaterally, and Fabere examination negative); Tr. 339 (September 19,

2011 examination showed tenderness to palpation at L5 level, no tenderness to

ORDER - 12

palpation over sacroiliac joints, and straight leg test negative bilaterally); Tr. 404 (January 10, 2012 examination showed Plaintiff moved easily from chair to exam table, had no decreased range of motion, had full strength, and was able to straight leg raise); Tr. 363 (June 13, 2012 examination showed full strength and normal sensation throughout, no gross abnormalities upon lumbar spine exam, very little tenderness upon palpation of the paravertebral musculature, full range of motion, no signs of facet pain with facet maneuvers, negative Patrick's exam, and negative straight leg test bilaterally); Tr. 293 (August 15, 2013 examination showed Plaintiff's back was normal to inspection and palpation, some tenderness, full strength to knee and ankle and hip, and negative straight leg raise bilaterally); Tr. 377 (September 27, 2013 examination showed full extremity strength and negative straight leg test bilaterally); Tr. 378 (January 10, 2014 examination showed ambulation with normal gait, pain-free passive range of motion of the hips, full strength with hip flexion, knee flexion, knee extension, dorsiflexion, and plantar flexion of the ankles bilaterally with no clonus and intact patellar tendon and Achilles reflexes; tension nerve roots signs equivocal). The ALJ reasonably concluded, based on this record, that the medical evidence did not support the level of impairment Plaintiff alleged. Tr. 32-33.

Plaintiff challenges the ALJ's finding by identifying evidence in the record that Plaintiff asserts supports Plaintiff's symptom complaints. ECF No. 15 at 8-9,

17-18; *see* Tr. 419 (February 2012 MRI impression: mild degenerative changes of the lumbar spine most pronounced at the L5/S1 level); Tr. 377 (interpreting February 2012 MRI as showing moderate to severe facet joint hypertrophy); Tr. 575 (September 11, 2015: abnormal lumbar range of motion and positive straight leg test). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ's interpretation of the evidence is reasonable and is supported by substantial evidence.

### 2. *Improvement with Treatment*

The ALJ found Plaintiff's testimony was inconsistent with her record of improvement with treatment. Tr. 32-33. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for

benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035,

1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's

complaints of debilitating pain or other severe limitations). Here, the ALJ noted

that Plaintiff testified that she received neither short-term nor long-term relief from

physical therapy. Tr. 32-33; *see* Tr. 56-57. However, the ALJ also noted that the

record indicated that Plaintiff reported improvement with physical therapy on

several occasions. Tr. 33; *see* Tr. 407 (December 23, 2010: Plaintiff reported

improvement in her pain after completing physical therapy and was not using

medications for pain); Tr. 365 (August 29, 2012: Plaintiff reported good control of

her low back pain following one month of physical therapy); Tr. 574 (November 5,

2015: Plaintiff reported some improvement with physical therapy and expressed a

desire to continue but at a slower pace); Tr. 583 (March 18, 2016: Plaintiff

reported recent physical therapy made a big difference for her).

Plaintiff challenges the ALJ's conclusion by offering evidence of Plaintiff's

reports that physical therapy was not helpful to her. ECF No. 15 at 18; *see* Tr. 411

(April 16, 2010: Plaintiff was permitted to stop physical therapy as it was not

helpful); Tr. 408 (October 22, 2010: Plaintiff reported that past physical therapy

was not helpful); Tr. 343 (August 11, 2011: Plaintiff reported past physical therapy

resulted in only some minimal improvement); Tr. 395 (September 19, 2012:

Plaintiff reported no significant improvement in her pain with physical therapy).

Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Based on this record, the ALJ reasonably concluded that the record did reflect some improvement with physical therapy, which was inconsistent with Plaintiff's testimony. Tr. 32-33. The ALJ's finding is supported by substantial evidence.

### 3. Conservative Treatment

The ALJ found Plaintiff's symptom complaints were inconsistent with her record of receiving conservative treatment. Tr. 33. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti*, 533 F.3d at 1039 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral

corset"). Here, the ALJ noted that Plaintiff's allegations of complete disability were inconsistent with the record of Plaintiff consistently being denied as a surgical candidate. Tr. 33-34; *see* Tr. 377 (September 27, 2013 treatment note indicated there were no surgical options available to Plaintiff); Tr. 379 (January 10, 2014 treatment note indicated Plaintiff was recently declined as a surgical candidate by neural surgery group); Tr. 382 (February 21, 2014 consultation report indicated no surgical intervention needed); Tr. 529 (February 20, 2015 consultation report indicated no surgical option available and back pain is best treated conservatively); Tr. 584 (March 18, 2016 consultation report indicated no operative intervention is necessary). The ALJ also noted that Plaintiff's treatment providers consistently recommended more conservative treatments instead of surgery. Tr. 33; *see* Tr. 382 (February 21, 2014: Plaintiff prescribed pain medication and recommended to physical therapy for core strengthening); Tr. 385 (April 25, 2014: Plaintiff reported marked improvement with medication and was recommended to continue with conservative options of medication and physical therapy); Tr. 529 (February 20, 2015: Plaintiff was recommended to keep weight down, exercise at home, use ibuprofen, and pursue epidural steroid injection if needed); Tr. 561 (April 20, 2015: Plaintiff reported pain relief with occasional use of Vicodin); Tr. 576 (September 11, 2015 physical therapy assessment recommended home exercise program); Tr. 584 (March 18, 2016: Plaintiff was

ORDER - 17

recommended a combination of SI Joint injection and Coccyx injection;

neurosurgeon recommended ongoing conservative treatment with physical therapy

and occasional injections). Plaintiff argues that the ALJ's finding is not supported

because Plaintiff did not experience lasting relief with conservative measures.

ECF No. 15 at 7; *see* Tr. 396 (September 5, 2012: Plaintiff reported no

improvement with physical therapy and excessive numbness from medial branch

blocks); Tr. 381 (February 21, 2014: Plaintiff reported past limited relief from

epidural steroid injection and bilateral facet injections, and no significant relief

from medial branch blocks); Tr. 563 (March 3, 2015: Plaintiff reported she did not

feel medication had helped with her pain). However, where evidence is subject to

more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*,

400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not

supported by substantial evidence. *Hill*, 698 F.3d at 1158. Based on this record,

the ALJ reasonably concluded that Plaintiff's history of conservative treatment

measures was inconsistent with her allegations of complete disability. Tr. 33. This

finding is supported by substantial evidence.

### 4. *Daily Activities*

The ALJ found Plaintiff's symptom complaints were inconsistent with her

daily activities. Tr. 34. A claimant's reported daily activities can form the basis

for an adverse credibility determination if they consist of activities that contradict

the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Although Plaintiff testified to significant daily back pain, causing her to be unable to walk or sit for more than 45 minutes at a time, the ALJ found Plaintiff had no limitation in her activities of daily living. Tr. 28-29; *see* Tr. 57-58. In her function report, Plaintiff reported her daily activities to include feeding and bathing her children, taking the dogs outside, bathing the dogs as needed, doing dishes, preparing meals, doing laundry, performing housework, shopping, attending church weekly, and attending other community events. Tr. 270-73. Plaintiff indicated she had no limitations in personal care activities. Tr. 270. Plaintiff also worked a part-time job for several years during the relevant period. Tr. 52.

Additionally, the ALJ noted that Plaintiff's counselor observed that Plaintiff's contention that she could not sit for any length of time was inconsistent with her husband's report that Plaintiff spends "all day long on the computer." Tr. 27; *see* Tr. 457. The ALJ reasonably concluded that these activities were inconsistent with the level of impairment alleged. Tr. 34. This finding is supported by substantial evidence.

### 5. Motivation to Work

The ALJ found Plaintiff's symptom complaints were inconsistent with her work-seeking activities. Tr. 34. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (seeking work despite impairment supports inference that impairment is not disabling). Additionally, Plaintiff's own perception of her ability to work is a proper consideration in determining credibility. *See Barnes v. Comm'r of Soc. Sec.*, No. 2:16-cv-00402-MKD, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Evidence of Plaintiff's preparedness to return to work, even if an optimistic self-assessment, is significant to the extent that the Plaintiff is willing and able to work, as that belief indicates her allegation of symptoms precluding work are not credible."). Here, the ALJ noted that Plaintiff reported consistently seeking work during the relevant period and was unsuccessful at finding work due

ORDER - 20

to reasons other than her impairments.  Tr. 34; *see* Tr. 54 (Plaintiff testified that she has been applying for jobs but was limited based on geographic location and experience); Tr. 363 (Plaintiff reported trying to find employment but was unsuccessful because "there is nothing out there").  Plaintiff also worked part-time during the relevant period.  Tr. 52.  The ALJ reasonably concluded that Plaintiff's efforts to find work were inconsistent with an inability to work due to disability. Tr. 34; *see Bray*, 554 F.3d at 1227 (approving of ALJ's rejection of Plaintiff's symptom testimony in part because Plaintiff sought work during period of alleged disability); *see also Woznick v. Colvin*, No. 6:15-cv-00111-AA, 2016 WL 1718363, at *4 (D. Or. Apr. 29, 2016) (ALJ reasonably discredited Plaintiff's symptom testimony in light of her efforts to seek work); *Lizarraga v. Colvin*, No. CV 14-9116-FFM, 2016 WL 1604704, at *4 (C.D. Cal. Apr. 21, 2016) (same). This finding is supported by substantial evidence.

### 6. *Unemployment Benefits*

The ALJ found Plaintiff's claim of complete disability was inconsistent with her receipt of unemployment benefits.  Tr. 34.  "Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working."  *Ghanim*, 763 F.3d at 1165 (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988).   Here, the ALJ observed that Plaintiff received unemployment benefits during the relevant period,

which indicated Plaintiff had declared herself as willing and able to work and as actively seeking employment opportunities. Tr. 34; *see* Tr. 234. While the record does not indicate whether Plaintiff held herself out as available for full-time or part-time work,[3] the Court finds the ALJ appropriately considered this factor in light of the record, discussed *supra*, that Plaintiff was working during the relevant period and described actively looking for work. Tr. 234; *see* Tr. 54, 363. Even if the ALJ erred in this analysis, the error is harmless. An error is harmless where the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See id.* at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible). As discussed *supra*, the ALJ provided

---

[3] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008).

several other clear and convincing reasons to discredit Plaintiff's symptom

testimony. Plaintiff is not entitled to relief on these grounds.

### B. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of

William Bothamley, M.D., Bruce Eather, Ph.D., and Linina Ragan, NP. ECF No.

15 at 4-14.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. *Dr. Bothamley*

Dr. Bothamley, Plaintiff's treating provider, opined on May 5, 2015, and again on March 8, 2016, that Plaintiff's back pain and migraines caused pain, that Plaintiff would need to lie down during the day, that Plaintiff's conditions were likely chronic, that working on a regular and continuous basis would cause Plaintiff's condition to deteriorate, and that Plaintiff would likely miss four or more days of work per month due to her impairments. Tr. 547-48, 570-71. The ALJ gave this opinion little weight. Tr. 35. Because Dr. Bothamley's opinion was

contradicted by Dr. Virji, Tr. 136-37, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion.[4] *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Bothamley's opinion was inconsistent with his treatment record. Tr. 35. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041. The ALJ noted that despite the severe limitations Dr. Bothamley opined, Dr. Bothamley prescribed conservative treatment. Tr. 35; *see* Tr. 397 (July 23, 2012: Dr. Bothamley would not feel comfortable prescribing narcotic drugs for Plaintiff's condition); Tr. 395 (September 19, 2012: Dr. Bothamley recommended physical therapy); Tr. 394 (October 9, 2012: Plaintiff declined to pursue treatment at Vancouver pain center; Dr. Bothamley suggested Lidoderm patch); Tr. 388 (May 29, 2014: Dr. Bothamley

_____

[4] Plaintiff asserts that Dr. Bothamley's opinion was not contradicted because no other medical provider gave an opinion as to whether Plaintiff needed to lie down during the day or how many days of work she would miss per month due to her impairments. ECF No. 15 at 5-6. However, Dr. Virji opined Plaintiff could perform work equivalent to the light exertional level with some postural and environmental limitations, which contradicts the less-than-sedentary exertional limitations Dr. Bothamley opined. Tr. 136-37.

recommended acupuncture); Tr. 553 (August 25, 2015: Plaintiff referred to physical therapy); Tr. 574 (November 5, 2015: Dr. Bothamley recommended Plaintiff continue physical therapy). The ALJ also noted that the observations in Dr. Bothamley's treatment notes were inconsistent with the opined limitations. Tr. 35; *see* Tr. 389 (December 6, 2013: Plaintiff's spinal MRI showed mild results); Tr. 562 (April 26, 2015: physical examination showed some tenderness in lower back); Tr. 554 (August 3, 2015: Plaintiff presented complaining of right leg; physical examination was normal); Tr. 552-53 (August 25, 2015: Plaintiff ambulated without difficulty and tenderness in low back was mild); Tr. 574 (November 5, 2015: Plaintiff in no distress and ambulated with normal gait). Plaintiff challenges the ALJ's finding by noting that Dr. Bothamley also referred Plaintiff out for specialist evaluations. ECF No. 15 at 7. However, as discussed *supra*, Plaintiff's specialist consolations also resulted in recommendations of conservative treatment. *See* Tr. 377, 379, 382, 385, 529, 561, 576, 584. The ALJ reasonably concluded, based on this record, that Dr. Bothamley's severe opined limitations were inconsistent with the milder findings and conservative treatment recommendations in his treatment notes. Tr. 35. This finding is supported by substantial evidence.

Second, the ALJ found Dr. Bothamley's opinion was inconsistent with the medical evidence as a whole. Tr. 35. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (2012) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Dr. Bothamley opined Plaintiff's limitations were attributable in part to migraine headaches. Tr. 547-48, 570-71. However, the ALJ observed that the record contained little objective evidence of limiting migraine headaches after her alleged onset date in March 2011 until Plaintiff began reporting headaches in 2015. Tr. 26, 35; *see* Tr. 545 (Plaintiff evaluated for migraines in August 2006); Tr. 542 (Plaintiff evaluated for migraines in November 2008); Tr. 343 (Plaintiff reported a history of headaches and occasional headaches on August 15, 2011); Tr. 401 (Plaintiff reported headaches as a temporary side effect of Cymbalta on April 20, 2012); Tr. 390 (Plaintiff reported headache and was diagnosed with rhinosinusitis); Tr. 381 (Plaintiff reported frequent headaches on February 21, 2014); Tr. 559 (Dr. Bothamley noted Plaintiff had a history of problems with headaches); Tr. 556-57 (Plaintiff reported increased headaches in June 2015). Plaintiff was evaluated by a neurologist for headaches on July 23, 2015, and reported some light and noise

sensitivity but that her headaches were not as bad as they used to be and that she used over the counter medication to manage symptoms. Tr. 566. The neurologist found Plaintiff's headaches were mainly perimenstrual and did not indicate a need for imaging or prescription medication. Tr. 567. The ALJ reasonably concluded that the record contained insufficient evidence of limiting headaches to support the significant limitations Dr. Bothamley opined. Tr. 26, 35. This finding is supported by substantial evidence.

Third, the ALJ found Dr. Bothamley's opinion was based on Plaintiff's self-reports. Tr. 35. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. The ALJ found that Dr. Bothamley's opinion that Plaintiff would need to lie down during the day was based on Plaintiff's self-reports. Tr. 35. Although Plaintiff asserts that this conclusion is "unexplained," ECF No. 15 at 8, Dr. Bothamley's report reflects that where prompted to indicate the reason for and duration of Plaintiff's need to lay down during the day, Dr. Bothamley responded "[S]he states it is variable – but it is always due to back pain." Tr. 580. This finding is clearly based

on Plaintiff's self-report. Additionally, as discussed *supra*, the lack of medical evidence supporting Dr. Bothamley's opined limitations further indicates that Dr. Bothamley's opinion relied substantially on Plaintiff's self-reports. Because the ALJ properly found Plaintiff's symptom testimony was not consistent with the evidence, *see supra*, this was a specific and legitimate reason to discredit Dr. Bothamley's opinion. This finding is supported by substantial evidence.

Plaintiff argues generally that the ALJ erred in discrediting Dr. Bothamley's opinion by failing to apply the appropriate factors to the evaluation of a treating provider's opinion. ECF No. 15 at 6-7 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)). Unlike *Trevizo*, here the ALJ noted that Dr. Bothamley was a treating provider, cited to Dr. Bothamley's treatment notes throughout the ALJ's decision, identified substantial evidence that was inconsistent with Dr. Bothamley's opinion, and made findings based on the ALJ's summary of the facts and conflicting clinical evidence. *Compare* Tr. 26-36 *with Trevizo*, 871 F.3d at 675-77. Furthermore, the ALJ identified substantial evidence that was consistent with the opinion of reviewing examiner Dr. Virji. Tr. 35-36; *see Andrews*, 53 F.3d at 1041 (the opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it). The ALJ reasonably credited the opinion of Dr. Virji over that of Dr. Bothamley. This finding is supported by substantial evidence.

### 2. *Dr. Eather*

Dr. Eather reviewed the administrative record on February 2, 2015, and opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions; moderately limited in her ability to carry out detailed instructions; moderately limited in her ability to maintain attention and concentration for extended periods; that her concentration, persistence, and pace would be diminished at times due to depression, anxiety, and pain focus but that she would be able to complete routine tasks over a normal eight-hour workday with customary breaks; that Plaintiff was moderately limited in her ability to interact appropriately with the general public; that Plaintiff's pain would likely reduce stress tolerance for dealing with the general public but that she would be able to interact for brief periods with others in a work setting and accept supervision; that Plaintiff was moderately limited in her ability to ability to respond appropriately to changes in the work setting; and that Plaintiff would be able to adapt to occasional changes in a work setting, avoid normal hazards, and travel. Tr. 137-39. The ALJ gave this opinion little weight. Tr. 28. Because Dr. Eather's opinion was contradicted by Dr. Miller, Tr. 508, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Eather's opinion was inconsistent with the medical evidence in the record. Tr. 28. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (2012) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The ALJ noted that despite the limitations Dr. Eather opined, Plaintiff's treatment history was minimal. Tr. 26-28. In March 2012, Plaintiff reported "some issues" with depression and was started on medication. Tr. 402. Plaintiff discontinued this medication by May 2012 because it did not improve her pain and because of side effects. Tr. 400. Tr. 27-28. Plaintiff engaged in therapy from June to December 2012, but these sessions focused relationship issues with Plaintiff's husband. Tr. 471-500. After a gap in treatment, Plaintiff re-engaged in treatment from June 2014 to January 2015, again focused on Plaintiff's relationship with her husband. Tr. 464-70, 510-28. In July 2014, Plaintiff stated she was not interested in starting medication because her symptoms had improved. Tr. 440. The ALJ noted that although Plaintiff's therapists often noted Plaintiff had a depressed mood, they made no findings of social or cognitive

limitations.  Tr. 27; *see* Tr. 441-503, 510-28.  Plaintiff's mental status examinations were largely normal.  Tr. 377 (September 27, 2013); Tr. 507-08 (November 18, 2014); Tr. 550 (August 25, 2015).  Additionally, the ALJ noted that Plaintiff did not testify to any ongoing mental health impairments at the hearing, noting only that her past mental health treatment was to deal with stress after losing her job and that she did not intend to return to treatment.  Tr. 28; *see* Tr. 51-64.  The ALJ reasonably concluded that this record indicated that despite the existence of a mental impairment, Plaintiff had minimal limitations in functioning.  Tr. 26.  This was a specific and legitimate reason to discredit Dr. Eather's opined limitations.

Second, the ALJ found Dr. Eather's opinion was inconsistent with Plaintiff's daily activities.  Tr. 28.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601-02.  The ALJ found Plaintiff had no limitation in her daily activities.  Tr. 28-29.  Plaintiff reported her daily activities to include feeding and bathing her children, taking the dogs outside, bathing the dogs as needed, doing dishes, preparing meals, doing laundry, and performing housework.  Tr. 270-72.  Plaintiff indicated she had no limitations in personal care activities.  Tr. 270.  Plaintiff reported her hobbies to include watching television, playing online games, and playing games with her children.  Tr. 273.  Plaintiff also reported visiting with friends and family,

attending church weekly, traveling to her in-laws' house, and participating in

community events. *Id.* Additionally, Plaintiff worked a part-time job for several

years during the relevant period. Tr. 52. The ALJ reasonably concluded that these

activities were inconsistent with the limitations in public interaction and

concentration, persistence, and pace that Dr. Eather opined. Tr. 28. This was a

specific and legitimate reason to discredit Dr. Eather's opinion.

Third, the ALJ found Dr. Eather's opinion was based on an incomplete

review of the record. Tr. 28. The extent to which a medical source is "familiar

with the other information in [the claimant's] case record" is relevant in assessing

the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6),

416.927(c)(6) (2012). The ALJ noted that Dr. Eather's review of the evidence

occurred on February 2, 2015. Tr. 28. Over 40 pages of evidence in the record

post-date Dr. Eather's review. Tr. 529-31, 547-87. The ALJ observed that these

treatment notes did not document significant mental health observations or

treatment. Tr. 28. In light of the ALJ's finding that Dr. Eather's opinion was not

supported by the minimal evidence in the record, the ALJ reasonably considered

the lack of support in the subsequent medical evidence in evaluating Dr. Eather's

opinion. Tr. 28. This was a specific and legitimate reason to discredit Dr. Eather's

opinion.

### 3. Ms. Ragan

Ms. Ragan treated Plaintiff on June 13, 2012, and opined that Plaintiff was capable of gainful employment despite Plaintiff's expressed desire to obtain disability benefits to be a full-time stay-at-home mom. Tr. 364. The ALJ gave this opinion significant weight. Tr. 32. As a nurse practitioner, Ms. Ragan is an "other source." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2013). The opinion of an "other source" may still be entitled to weight depending on the particular facts of a case. 20 C.F.R. §§ 404.1527(f), 416.927(f) (2012) ("Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6), not every factor for weighing opinion evidence will apply in every case"); *see also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) ("[T]hough [the nurse practitioner] is not an 'acceptable medical source,' she is an 'other source' and there are strong reasons to assign weight to her opinion."). The standard to reject opinion evidence does not apply where the ALJ credits the evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

Here, the ALJ found Ms. Ragan's opinion was consistent with her own examination findings. Tr. 32. An opinion is entitled to more weight where it is supported by relevant medical evidence. 20 C.F.R. §§ 404.1527(c)(2)(iii), 416.927(c)(2)(iii) (2012). The ALJ noted that Ms. Ragan's examination of Plaintiff revealed normal gait, full strength, normal sensation, no gross

ORDER - 34

abnormalities of lumbar spine, very little tenderness, full range of motion, and negative straight leg raise bilaterally.  Tr. 32; *see* Tr. 363.  Second, the ALJ found Ms. Ragan's opinion was consistent with the opinions and recommendations of other medical providers in the record.  Tr. 32.  The ALJ noted that Ms. Ragan's recommendation to physical therapy and exercise was consistent with the recommendations of other providers.  Tr. 32; *compare* Tr. 364 *with* Tr. 382, 385, 529, 561, 576.  Third, the ALJ found Ms. Ragan's opinion was consistent with Plaintiff's job-seeking activities.  Tr. 32.  The ALJ noted that Plaintiff reported looking for work during the relevant period, which was consistent with Ms. Ragan's opinion that Plaintiff was capable of working.  Tr. 32; *see* Tr. 52, 54, 363.  The ALJ's decision to give Ms. Ragan's opinion significant weight is supported by substantial evidence.

Plaintiff challenges the ALJ's finding, arguing that the ALJ should have discredited Ms. Ragan's opinion for a variety of reasons.  ECF No. 15 at 14.  Plaintiff essentially invites this Court to reweigh the evidence.  The Court "may neither reweigh the evidence nor substitute its judgment for that of the Commissioner."  *Blacktongue v. Berryhill*, 229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing *Thomas*, 278 F.3d at 954); *see also Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  The ALJ's evaluation of Ms.

Ragan's opinion is a rational interpretation of the evidence and is supported by substantial evidence.

**C. Step Five**

Plaintiff challenges the ALJ's conclusion at step five that Plaintiff was capable of performing other work in the national economy. ECF No. 15 at 14-17. First, Plaintiff asserts the ALJ did not identify enough jobs that exist in significant numbers in the national economy that Plaintiff could perform. ECF No. 15 at 15. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. There is no "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran*, 700 F.3d at 389. Here, the vocational expert testified that an individual with Plaintiff's RFC was capable of performing the jobs of laundry folder, with 199,300 jobs available in the national economy, or ticket taker, with 133,700 jobs available in the national economy. Tr. 71. These numbers sufficiently establish that these jobs exist in significant numbers in the national economy.[5] *See Guitierrez v. Comm'r of*

---

[5] Plaintiff also cites to POMS ID 25025.030 as authority that the ALJ was required to identify at least three occupations existing in significant numbers in the national

ORDER - 36

*Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 in the national economy to be a sufficiently significant number).

Next, Plaintiff asserts that the vocational expert's testimony was unreliable in light of information Plaintiff presents from the Occupational Employment Statistics (OES) program. ECF No. 15 at 15-17. "The Bureau of Labor Statistics provides employment statistics for various occupations based on its [OES] program. The OES program uses the Office of Management and Budget's Standard Occupational Classification ('SOC') for classifying 'workers and jobs into occupational categories for the purpose of collecting, calculating, analyzing, and disseminating data.'" *Leija v. Colvin*, No. 1:13-cv-1575 GSA, 2015 WL 1439933, at *5 (E.D. Cal. Mar. 27, 2015) (internal citations omitted).

A vocational expert's testimony constitutes substantial evidence in support of an ALJ's findings. *Thomas*, 278 F.3d at 960. However, the court may "remand

_____

economy that Plaintiff could perform. ECF No. 15 at 15. "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). The Court finds that the two occupations identified by the ALJ exist in significant numbers in the national economy and satisfy the ALJ's step five burden.

a case when the vocational expert's testimony is 'fundamentally flawed.'" *Dunn v. Colvin*, No. 13cv1219-MMA, 2014 WL 2159275, at *9 (S.D. Cal. May 23, 2014) (citing *Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (granting remand where "a reasonable mind would not accept the VE's testimony")). In this case, the vocational expert testified that an individual with Plaintiff's RFC was capable of performing the job of laundry folder, DOT code 369.687-018. Tr. 71. In response to a question from Plaintiff's counsel, the vocational expert testified that the job of laundry folder fell within the OES group of "laundry and dry cleaning workers," and that the vocational expert did not know how many unique DOT codes fell within that OES category. Tr. 76. The vocational expert was not asked about and did not testify to the OES category for ticket taker, the other occupation identified as consistent with Plaintiff's RFC. Tr. 69-77.

Plaintiff's challenges to the vocational expert's testimony do not show that the testimony was "fundamentally flawed." *Dunn*, 2014 WL 2159275 at *9. First, Plaintiff asserts that the vocational expert's testimony was unreliable because she did not know the total number of DOT codes that fall within the OES category of laundry and dry cleaning workers. ECF No. 15 at 16. However, information about other DOT codes is not relevant to the vocational expert's testimony about the number jobs under the DOT code for laundry folder that were available in the national economy. Second, Plaintiff asserts the vocational expert's testimony was

unreliable because the vocational expert's employment numbers may have included part-time work. ECF No. 15 at 16. However, "there is no case law stating that the ALJ cannot consider part-time work in the step five analysis." *Wright v. Colvin*, No. CV 12-1893-SP, 2014 WL 5456044, at *6 (C.D. Cal. Oct. 27, 2014); *see also King v. Astrue*, No. C 09-05322 MEJ, 2011 WL 1791553, at *19 (N.D. Cal. May 10, 2011) (noting that the regulations only require that a significant number of jobs exist either in the region where the claimant lives or in several other regions of the country). Finally, Plaintiff asserts that the employment number the vocational expert gave for the ticket taker job was inconsistent with the employment numbers for a similar OES group of occupations. ECF No. 15 at 16. However, Plaintiff "did not question the vocational expert about the OES calculations on which [Plaintiff] now relies, and therefore there is no foundation in the record explaining how counsel has translated the DOT job codes into the Standard Occupational Classification ('SOC') system used by OES." *Ledesma v. Berryhill*, No. 16-882-AGR, 2017 WL 2347181, at *4 (C.D. Cal. May 30, 2017). Accordingly, Plaintiff does not establish that the vocational expert's testimony was "fundamentally flawed." *Dunn*, 2014 WL 2159275 at *9.

Overall, the ALJ's evaluation of the vocational expert's testimony is supported by substantial evidence and the ALJ properly identified jobs that exist in

significant numbers in the national economy that Plaintiff could perform.  The

ALJ's step five finding is legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE.**

DATED November 21, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE